[No. 12518. Department Two. January 8, 1916.]

ANDREW PETERSON *et al., Appellants,* v. DENNY-RENTON CLAY & COAL COMPANY, *Respondent.*[1]

EVIDENCE—PAROL EVIDENCE—TO VARY WRITING. Where a shipping order constituted a complete contract for the sale of four million brick at $17.25 per thousand, it is inadmissible to show by parol that it was not a complete contract but only an order for shipping brick of a different grade, previously contracted for at $13.75 by a written contract therefor which had been lost.

SALES—WRITTEN WARRANTY—BREACH—PAROL EVIDENCE—ADMISSIBILITY. In an action to recover the price of "highway paving brick" sold under a written contract at $17.25 per thousand, the defendant may show by parol, as a partial defense, that the brick furnished was of inferior grade of less value, known as No. 2, and quoted in plaintiff's price list at $13.75 per thousand.

SALES—WARRANTY — BREACH — WAIVER — DAMAGES FOR INFERIOR QUALITY. Where brick was sold as "highway paving brick" there was an express warranty that the brick to be delivered would be highway paving brick, and the fact that the vendee accepted brick of inferior grade and less value without objection or offering to return them does not waive the warranty, or prevent him from offsetting his damages, in an action to recover the purchase price.

Appeal from a judgment of the superior court for King county, Humphries, J., entered October 16, 1914, in favor of the defendant, upon withdrawing the case from the jury, in an action on contract. Reversed.

*John W. Roberts* and *George L. Spirk,* for appellants.

*Ballinger, Battle, Hulbert & Shorts,* for respondent.

[1]Reported in 154 Pac. 123.

Morris, C. J.—This is an appeal from a judgment in favor of the Denny-Renton Clay & Coal Company, respondent herein, against Andrew Peterson, for the price of a quantity of paving brick, bought by Peterson from the company and used by him in building a portion of state highway No. 4, north of the city of Seattle, for the construction of which he held a contract with King county.

After the contract was completed, a number of liens were filed against the work, and the National Surety Company, surety on Peterson's bond to the county, instituted this action to have determined the rights of the various lien claimants to the funds in the hands of the county commissioners due to Peterson. The respondent was, among others, named as defendant, and appeared by answer and cross-complaint, seeking to recover a balance of $40,836.35, claimed to be due on the brick purchased from it by Peterson. Peterson admitted a balance of $27,152.58 due the respondent, and made tender of that amount, but denied the balance claimed by the company. To prove the contract of sale, the company introduced, over objection, a shipping order which reads as follows:

DENNY-RENTON CLAY & COAL CO.

SHIPPING ORDER No. Renton *1004*            Date *Sept. 20, 1913.*
Ship to *Andrew Peterson*            at    *as instructed*
Route    *as instructed*
Ship when    *Hold for shipping instructions*
Charge to *Andrew Peterson*    Address *Railway Exchange Building,*
                                    L. I. D. No.    *Seattle, Wash.*
Location of Work    *North Trunk Road Permanent Highway No. 4*
Owner's Name                    Address
Sold F. O. B. *cars Renton factory*    Freight allowed to
Purchaser's Order No.        Req. No.        Frt. Rate
Minimum Weight 60,000 Lbs.
Pieces                    Articles
*Approx*
*4,000,000    Highway Paving Brick*
    *Note by G. W. P. (Will want brick in about 3 weeks from date and then fully 40,000 per day steady shipment. Will advise several days in advance.)*
    *ORIGINAL.        CREDIT O. K.    T. W. L.*

Notice to Factory: If·any portion of this order cannot be filled as
   specified, advise this office in·writing immediately on receipt of
   order.
      Price   *Seventeen dollars & twenty-five cents per thousand Net.*
         *($17.25)*
*Terms.    Net cash on or before the tenth of the month following date
of shipment.*
PURCHASER PLEASE NOTE:   We hand you herewith duplicate
   copies of your valued order as same has been entered for delivery
   by us.   If same is correct, please sign and return original to us
   and keep duplicate for your records.   If not correct, please ad-
   vise stating wherein an error appears.
NOTE:    All contracts, sales and deliveries are contingent upon de-
   lays caused by fire, strikes, accidents, floods, carriers and other
   conditions beyond our control.
                  DENNY-RENTON CLAY & COAL CO.
*Date Sept 22 1913*               *Sign here    Andrew Peterson.*

Peterson sought to show that this shipping order was not
his contract with the brick company, but that he had con-
tracted with it for a quality of brick known as No. 2, at a
price of $13.75 per· M., and had actually received and used
that kind of brick in the construction of the road.   All his
offers of such testimony were refused by the trial court, on
the ground that the shipping order was a written agree-
ment constituting the contract of purchase between the par-
ties, and oral testimony could not be received to vary or con-
tradict the terms thereof.   At the conclusion of the testi-
mony and offers to prove, each party challenged the suf-
ficiency of the evidence to sustain a judgment for the ad-
verse party, and moved for judgment.   The trial court there-
upon took the case from the jury and entered judgment for
the respondent and against both National Surety Company
and Peterson.

By his offers of testimony, Peterson sought to show that,
prior to the signing of the shipping order, he had entered
into a written contract with the respondent for the pur-
chase of No. 2 brick.   This contract was not produced at
the trial, counsel stating that it had been lost.   This offer
was refused, whereupon Peterson sought to show the circum-

stances under which the shipping order was signed, to establish that it was not a complete contract but only an order to ship brick previously contracted for. This offer was likewise refused. The ruling of the trial court in excluding this evidence is assigned as error. The shipping order was upon its face a complete contract between the parties covering all the terms of the order, and as the offer of testimony to prove a different contract did not tend to establish fraud in the procurement of the shipping order, but only to modify it by parol testimony, the trial court held correctly that the evidence was inadmissible.

A price list of the respondent was introduced in evidence showing the price of No. 2 brick as $13.75 per thousand, and the amount tendered in court by Peterson would be the correct amount due the respondent for the brick delivered if it was No. 2 brick. Peterson made offers to prove by numerous witnesses that the brick actually delivered to him by respondent was No. 2 brick, and not highway paving brick, as provided for in the shipping order. The trial court refused this offer, and this we think was error. It would seem a travesty on justice to hold that a party could not show, in a suit to recover the purchase price, that the article delivered was not the article contracted for, but one of inferior quality and less value. It would be taking away a defense of litigants that has never been questioned by the courts. The authorities are united in holding that a vendee, when sued for the purchase price of goods, may show that the goods were not what he contracted for.

In *Smith v. Pickands*, 148 Mich. 558, 112 N. W. 122, the court held that the burden of proof was on the vendee to show that the goods delivered were not as specified in the contract, after an acceptance by the vendee.

In *Home Ice Factory v. Howells Min. Co.*, 157 Ala. 603, 48 South. 117, there was a contract by the terms of which the vendor contracted to ship the vendee the best quality of coal, and the vendee sought to escape liability on the pur-

chase price on the ground that the coal received was of an inferior grade, and the court there held that the quality of the coal was an issue in the case, and evidence was taken on that question.

In *Neck v. Marquette Cement Mfg. Co.*, 158 Wis. 298, 148 N. W. 869, a quantity of cement was sold under a written contract, which provided that the cement should conform to standard specifications for Portland cement adopted by the American Society for testing materials with methods of testing recommended by the American Society of Engineers. Evidence was admitted showing that the cement was inferior by the use of another test, and in answer to the vendor's contention that the only way the cement could be shown inferior in quality was by the test provided for in the contract, the court said:

"In the absence of a provision in the contract making the test the sole evidence of the inferiority of the cement, the fact might be established by other evidence."

*Mette & Kanne Distilling Co. v. Lowrey*, 39 Mont. 124, 101 Pac. 966, holds that, in an action by a vendor to recover the purchase price of chattels sold under a contract, the burden of proof is on the vendor to show a delivery of the goods described in the contract, thus recognizing the rule that the vendee can show that the goods delivered were not the goods described in the contract.

Respondent next contends that, because Peterson accepted and used the brick without notifying it, until this action was instituted, that they were of a quality inferior to that contracted for, he cannot now be heard to say that the bricks were inferior to those described in the contract. In discussing the rules applicable to this contention, it will be well to keep in mind that respondent is attempting to recover the purchase price of highway paving brick as provided for in the contract of purchase, there thus being an express warranty that the brick to be delivered would be highway paving brick. Peterson is not seeking to rescind the contract nor

to avoid liability for the value of the brick, but is attempting to set off the difference in price between the brick described in the contract and the brick he claimed to have received.

In *Tacoma Coal Co. v. Bradley*, 2 Wash. 600, 27 Pac. 454, 26 Am. St. 890, this court said:

"It is undoubtedly true that if the brick were defective, and appellant was silent, and did not give notice or offer to return them within a reasonable time after discovering defects, the right to rescind the sale was thereby waived. *But the right to recover damages on account of defective quality was in no wise affected.*"

Again, in *Dickinson Fire & Pressed Brick Co. v. Crowe & Co.*, 63 Wash. 550, 115 Pac. 1087, we said:

"If we should concede that there was a breach of warranty, the rule is that a failure to give notice, or to offer to return the property within a reasonable time after discovering the defects, operates as a waiver of the right to rescind, and *leaves the purchaser only the right to recover or offset damages to the extent of the diminished value of the article.*"

In *Dayton v. Hooglund*, 39 Ohio St. 671, the court held that,

"In a suit for the price of a lot of iron manufactured by the plaintiff for the defendant, the defendant, in case there is a breach of warranty as to the quality of the iron, may *recoup* for such damages as he has sustained, although he has used the iron without offering to return it."

Other cases adhering to this rule are: *Stark Bros. Nurseries & Orchards Co. v. Mayhew*, 160 Mo. App. 60, 141 S. W. 433; *Grisinger v. Hubbard*, 21 Idaho 469, 122 Pac. 853, Ann. Cas. 1913 E. 87; *Rosenbaum Grain Co. v. Pond Creek Mill & Elevator Co.*, 22 Okl. 555, 98 Pac. 331; *Graff v. Osborne & Co.*, 56 Kan. 162, 42 Pac. 704.

The case of *Williams v. Miller*, 1 Wash. Terr. 88, cited by respondent, does seem to support its contention that the acceptance and use of goods estops the vendee from showing that they were not what he contracted for. But from the

facts in that case it does not appear whether or not there was any warranty of the goods sold, or whether there was any provision in the contract for inspection, either of which conditions would change the rule; and, if that case could be construed as supporting respondent's contention, it has been impliedly overruled by the *Tacoma Coal Co.* and *Dickinson* cases, *supra,* in so far as it attempts to hold that a vendee is liable for the contract price of goods when he has accepted goods inferior to those described in the contract.

The case of *Childs Lumber & Mfg. Co. v. Page,* 28 Wash. 128, 68 Pac. 373, holds that, where a party does not object to materials furnished for the construction of a building, but allows them to be used in the building, he cannot thereafter refuse to pay for them on the ground that they were inferior. But the contract in that case provided for an inspection on the part of the vendee. There is a well-defined distinction in the rule where an inspection or test is provided for in the contract, which was noticed by us in *Hurley-Mason Co. v. Stebbins, Walker & Spinning,* 79 Wash. 366, 140 Pac. 381, L. R. A. 1915B 1131. In that case we said in part:

"The authorities cited by the respondent are clearly distinguishable from the case here. In *Tacoma Coal Co. v. Bradley,* 2 Wash. 600, 27 Pac. 454, 26 Am. St. 890, there was involved a sale of bricks by the manufacturer for the construction of coke ovens. The sale was not expressly subject to inspection or test and the order for the bricks negatived any implication to that effect. . . . While recognizing the rule, as sustained by the New York and Wisconsin authorities, that, in the absence of a warranty and a breach, the vendee's rights to recover damages does not survive the acceptance of the property after an opportunity to discover defects, unless notice has been given to the vendor or the vendee returns or offers to return the property, the court points out the fact, which we have also noted, that this rule does not apply in cases of express warranty of quality."

*Schopp v. Taft & Co.,* 106 Iowa 612, 76 N. W. 843, cited by respondent, sustains this doctrine and holds that, in the

absence of a warranty, when goods are tendered by the seller in performance of an executory contract of sale, and accepted by the buyer after an opportunity of inspection, without objection, the purchaser is liable for the price agreed upon.

In *Yeiser v. Russell & Co.*, 26 Ky. Law 1151, 83 S. W. 574, relied upon by respondent, the court said:

"There is no better settled principle of law than that, if a vendee accepts goods delivered under a warranty of quality, or retains them after the discovery that they are not the articles purchased, and fails to give notice within a reasonable time that he declines to receive them, because not in conformity with the contract, or exercises ownership over them, he cannot thereafter refuse to pay for them."

While this case holds that the vendee will have to pay for the goods, it does not hold that he has to pay the contract price, or that he cannot recoup damages for the difference between the contract price and the price of the goods actually delivered. In fact, in this very case the vendee did file a counterclaim for damages accruing from the failure of the vendor to deliver the goods he contracted to deliver, and a judgment for $40 was entered in favor of the vendee and the vendor took nothing.

The right of a vendee, when sued for the purchase price of goods, to show that the goods received were not as contracted for is well established; *Tacoma Coal Co. v. Bradley*, and *Dickinson Fire & Pressed Brick Co. v. Crowe & Co., supra.* We conclude, therefore, that it was error to exclude evidence of the kind of brick actually delivered by the respondent, and for this reason the judgment must be reversed, and the cause remanded for further proceedings consistent with this opinion.

Fullerton, Main, and Ellis, JJ., concur.