JOHN RAMMING

v.

S. H. CALDWELL.

*Sales—Second-Hand Goods—Written Contract—Implied Warranty—*
Remittitur—*Practice.*

1. There can be no implied contract between parties named touching a given matter, there being a complete, written express contract embracing the same.

2. A written contract containing no warranty, the law will imply there was none, and that a given purchase was made at the risk of the purchaser and upon his own judgment.

3. It is proper, in case of a written contract, for the court to construe the same and instruct the jury if such be the case that it contains no warranty.

4. No implication arises that a warranty exists as to an article sold as second-hand goods that it will answer the purpose for which made.

5. An express contract in writing can not exist as to one part of a contract, and an implied one of the vendor as to another part of the same contract, growing out of the same transaction, and the same in point of time.

6. The fact that a *remittitur* has been entered in a given case, in this court, for a part of the sum for which a certain judgment was rendered below, can not cure errors of law occurring on the trial going to the right of recovery.

[Opinion filed February 26, 1892.]

IN ERROR to the City Court of East St. Louis, Illinois; the Hon. B. H. CANBY, Judge, presiding.

Messrs. A. S. WILDERMAN and J. M. HAMILL, for plaintiff in error.

Messrs. MESSICK & RHOADS, for defendant in error.

PHILLIPS, P. J.    The defendant in error instituted his action of assumpsit against the plaintiff in error in the City Court of East St. Louis. The declaration alleges that in consideration that the plaintiff, Caldwell, would buy of the defendant, Ramming, at his request, certain machinery and merchandise named, and have a man assist in putting the same in a building to be used as a planing mill, said machinery to be placed in said building within a reasonable time, for which the plaintiff was to pay a specified price, and that said machinery was to be in good order and suitable for the purpose for which the same was to be used. That defendant made certain promises. That defendant did not regard his promises, but furnished a boiler which was not of the dimensions promised and not suit-

able for the purpose furnished, and which was old and eaten up with rust, and would leak, and that other machinery was not of the quality and would not perform the work promised, and plaintiff thereby lost much time and lost business and profits and was put to expense in repairs, and sustained damage. To this declaration the defendant filed the general issue, and on trial a verdict and judgment was entered for plaintiff for the sum of $500. A motion for new trial being overruled, the defendant sues out this writ of error and brings the record to this court for review. The plaintiff paid all but a few dollars of the price of the machinery and merchandise, and on the trial the plaintiff claimed the sale, by the defendant to him, of the goods in the declaration described with a warranty of quality and that they would do the work for which they were intended, and that the boiler and other machinery would not do the work and were not in repair, and that the plaintiff lost much time, and there was loss of profits, and the mill was idle, and there was great expense in repairing the machinery, boiler, etc. The weight of this evidence shows the machinery and boiler did not do good work, and the boiler was out of repair. The evidence of plaintiff is that the boiler was to be a second-hand boiler. The defendant insists the boiler, machinery and merchandise were furnished under a written contract which was offered in evidence and is as follows:

"St. Louis, July 20, 1887.

Mr. S. H. Caldwell, East St. Louis, Ill.

*Dear sir:* I propose to furnish you, 12-inch bore, 24-inch stroke, horizontal, slide valve engine, with the Vandergrift automatic cut-off attachment, 8½-inch diameter, 10½-foot shaft 16-foot, 6 arm flywheel, weighing 10,000 pounds; one 8-foot. or 9-foot diameter 16-inch face pulley; one 48-inch diameter, 20-foot long, 4-flue horizontal boiler with 20-inch diameter, 4-foot long steam drum, and 20-inch diameter, 6-foot long heater, containing 60-foot of 1½-inch pipe; also breeching and stock to be 24-inch diameter, 40-foot high, upper part No. 16 iron, lower part No. 14 iron; new fire front, grate bars, back stand, barring bar, etc., one fire rake, scraper and poker, safety

check and blow-off valve, steam gauge, glass water gauge and gauge cocks, throttle valve close to steam drum; all steam and exhaust pipe; also, 1¼-inch bleeder pipe and valve from boiler to heater water connections, not exceeding 15 feet from boiler, also extra water connections for filling boiler; one No. 2 Little Giant Injector connected with heater; exhaust pipe to an elevation of 10 feet above roof; necessary guy rods for stack; all necessary foundation bolts and plates, together with template for engine, to be delivered within four days. Also furnish the pulleys, shaftings, hangers, etc., as specified in another proposal, and have a man to assist in the erection of all· the above described machinery, for the sum of $1,185; $15 to be deducted on condition that $500 is paid on delivery of all machinery. Machinery to be delivered within ten days from the date of this proposal, excepting the pulleys, etc.

Respectfully,

JOHN RAMMING,
N. J. MAURER.

All necessary oil cups and wrenches will be furnished with engine."

" The above contract is accepted this 20th day of July, 1887.
S. H. CALDWELL."

The plaintiff admits the execution of this contract, but claims that he did not understand this to be a contract, but a specification of what was to be furnished.

The action being an action at law, the rules of law applicable to this class of contracts must be applied. The proposal to furnish and sell the property in the written proposition, accepted in writing as a contract, made the contract between the parties and included the whole subject-matter of the contract, and all previous or contemporaneous negotiations were merged in that written contract. It constitutes a contract complete in itself and without ambiguity. It is therefore a contract in writing and contains no warranty as to quality or to the manner in which the work will be done. The contract being a complete, written, express contract, there can be no implied contract between the parties pertaining to this same subject-matter. De Witt v. Berry, 134 U. S. 306; Ruff v.

Jarrett, 94 Ill. 475; Robinson v. McNeill, 51 Ill. 225; Graham v. Eisener, 28 Ill. App. 269; Whitemore v. South Boston Iron Co., 6 Allen, 52.

The defendant asked the court to give the following instruction:

"The jury are also instructed that there is no special warranty or guaranty in the written contract that the property should be of any quality, and in the absence of such a warranty or guaranty the presumption is the plaintiff was buying at his own risk, and relying on his own judgment," which instruction the court refused to give the jury. The written contract containing no warranty, and there being an express contract, no contract of warranty could exist by implication; the law must presume there was no warranty, and the purchaser bought at his own risk and on his own judgment, and the contract being in writing, it was the duty of the court to construe it and instruct the jury it contained no warranty. Walker v. Brown, 28 Ill. 378; Ogden v. Kirby, 79 Ill. 555; W., St. L. & P. Ry. Co. v. Jaggerman, 115 Ill. 407.

This instruction should have been given as asked. Nor will the fact that the defendant was to do certain work on the boiler, change the character of the written contract. For if it be admitted that he was to place the same in position, yet the evidence of the plaintiff is that the boiler sold to him was to be a second-hand boiler; in such case no implication arises that a warranty exists that the article, sold as second-hand goods, will answer the purpose for which made. Archdale v. Moore, 19 Ill. 565; Kohl v. Lindley, 39 Ill. 195; Misner v. Granger, 4 Gilm. 69. An express contract in writing could not exist as to one part of the contract, and an implied one of the vendor as to another part of the same contract, growing out of the same transaction and the same in point of time. The instruction asked by plaintiff and given by the court, which proceeded on the theory of an implied contract, should not have been given. We do not deem it necessary to discuss questions raised by the assignment of errors, as to damage, based on proof that the mill was idle and there was a loss of profits. Proof was allowed to go to the jury of the cost of repairs of

the boiler, and the principal basis of the claim for damage was on the theory that the boiler was not in good condition, and would not do the work, and much expense was incurred in its repair. A *remittitur* has been entered in this court for a part of the sum for which judgment was rendered, but that can not cure errors of law occurring on the trial going to the right of recovery. The judgment must be reversed and cause remanded.

*Reversed and remanded.*